UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA
AUGUSTA DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| v. ) | 1:19-cr-00149 |
| ) | |
| PATRICK SIADO ) | |

## PLEA AGREEMENT

Defendant Patrick Siado, represented by his counsel John Price, and the United States of America, represented by Assistant United States Attorneys J. Thomas Clarkson and Hank Syms, have reached a plea agreement in this case. The terms and conditions of that agreement are as follows.

1. Guilty Plea

Defendant agrees to enter a plea of guilty to Count One of the Indictment, which charges a violation of 18 U.S.C. § 371, Conspiracy.

2. Elements and Factual Basis

The elements necessary to prove the offense charged in Count One are (1) that two or more persons in some way agreed to try to accomplish a shared and unlawful plan; (2) that the Defendant knew the unlawful purpose of the plan and willfully joined in it; (3) that, during the conspiracy, one of the conspirators knowingly engaged in at least one overt act as described in the Indictment; and (4) that the overt act was committed at or about the time alleged and with the purpose of carrying out or accomplishing some object of the conspiracy.

Defendant agrees that he is, in fact, guilty of this offense. He agrees to the accuracy of the following facts, which satisfy each of the offense's required elements:

Beginning not later than March 2019, and continuing until on or about July 2019, the exact date being unknown, in the Southern District of Georgia and elsewhere, Patrick Siado did knowingly and willfully combine, conspire, confederate, and agree with others known and unknown, including B.S., J.D., S.S., to commit one or more offense against the United States, that is,

a) to defraud the United States through deceitful and dishonest means, the lawful government functions of HHS in its administration and oversight of the Medicare and Medicaid program;

b) to knowingly and willfully solicit and receive remuneration, including kickbacks, directly and indirectly, overtly and covertly, in cash and in kind to any person to induce a person to order an item for which payment may be made in whole and in part under a federal health care program, that is, Medicare and Medicaid, in violation of Title 42, United States Code, Section 1320a-7b(b)(1);

c) to knowingly and willfully offer and pay remuneration, including kickbacks, directly and indirectly, overtly and covertly, in cash and in kind to any person to induce a person to refer an individual for the furnishing and arranging for the furnishing of an item or service for which payment may be made in whole and in part under a federal health care program, that is, Medicare and Medicaid, in violation of Title 42, United States Code, Section 1320a-7b(b)(2);

It was the purpose of the conspiracy for **SIADO**, his coconspirators, and **OPTIMUS**, to unlawfully enrich himself and others by, among other things: (a) causing the submission of false and fraudulent claims to Medicare that were (i) procured by the payment of kickbacks; (ii) medically unnecessary; (iii) ineligible for Medicare and Medicaid reimbursement; and/or (iv) not provided as represented; (b) concealing the submission of false and fraudulent claims to Medicare and Medicaid and the receipt and transfer of the proceeds from the fraud; and (c) using the proceeds of the fraud for the personal use and benefit of **SIADO** and his accomplices.

The manner and means by which the defendant and his co-conspirators sought to accomplish the objects and the purpose of the conspiracy included, among other things:

- **SIADO**, and others affiliated with **OPTIMUS**, Company A, and Company B, organized networks of individuals and arranged for their transportation to communities with low-income and elderly individuals within the Southern District of Georgia, Augusta Division, and elsewhere.

- **SIADO**, and others affiliated with **OPTIMUS**, Company A, and Company B, went door-to-door to obtain (a) personal identifying information such as Medicare and Medicaid benefit numbers and identities, (b) buccal swabs of saliva.

3

- **SIADO**, and others affiliated with **OPTIMUS**, would then transmit the identities of Medicare and Medicaid beneficiaries and buccal swabs to Company A, a "marketing company."
- The co-conspirators would then arrange for a "telemedicine" physician to order the test as "medically necessary" for the patients identified by **SIADO** and **OPTIMUS**, despite the fact that the physician never met the patient, let alone established a legitimate physician-patient relationship, as required.
- The co-conspirators would then transmit the identities of Medicare and Medicaid beneficiaries, swabs, and corresponding "telemedicine" physician orders to laboratories, including Company C, which then submitted claims to Medicare and Medicaid.
- Company C, among other laboratories, would then bill Medicare and Medicaid using the identities of the individuals gathered by **SIADO** and his network.
- **SIADO**, through **OPTIMUS**, would receive a payment for each test "accepted" by the marketing company and laboratory, which involved "sales processed" through the laboratory. Specifically, the terms of the kickback agreed to by **SIADO** and his co-conspirator include

  "Accepted Personal CGx Test"- $575

  "Accepted Family CGx Test" - $475

  "Accepted Cardiac Test" -$200

  "Accepted Alzheimer's Test" -$150

  "Accepted Beacon Carrier" - $250

4

"Accepted PGx Test" - $100

- **SIADO** would then pay a kickback to individuals working for him who assisted with the door-to-door targeting of Medicare and Medicaid patients.
- **SIADO** and his co-conspirators then used the fraud proceeds to benefit themselves and others.

In furtherance of the conspiracy and to effect the illegal objects of the conspiracy, the following overt acts, among others, were committed in the Southern District of Georgia and elsewhere:

**SIADO**, aided and abetted by others, obtained the identity and a swab from numerous patients located within the Southern District of Georgia, Augusta Division, and elsewhere including

    a. On or about May 13, 2019: the identity and a swab of Elizabeth C.

    b. On or about May 13, 2019: the identity and a swab of Joe B.

    c. On or about May 13, 2019: the identity and a swab of Patricia E.

**SIADO**, aided and abetted by others, then sold the identity and swab obtained, permitting Medicare and Medicaid to be billed for the fraudulent services, and received, in exchange, money from other conspirators including

    d. On or about May 15, 2019, **SIADO** and **OPTIMUS** received a $575 kickback in exchange for the identity and a swab from Jackie B.

    e. On or about May 15, 2019, **SIADO** and **OPTIMUS** received a $575 kickback in exchange for the identity and a swab from Paula D.

    f. On or about May 15, 2019, **SIADO** and **OPTIMUS** received a $575 kickback in exchange for the identity and a swab from Russell G.

    g. On or about May 15, 2019, **SIADO** and **OPTIMUS** received a $575 kickback in exchange for the identity and a swab from Jackie B.

    h. On or about May 15, 2019, **SIADO** and **OPTIMUS** received a $575 kickback in exchange for the identity and a swab from Paula D.

    i. On or about May 15, 2019, **SIADO** and **OPTIMUS** received a $575 kickback in exchange for the identity and a swab from Russell G.

On or about July 19, 2019, **SIADO** organized a meeting to recruit new individuals to obtain "customers" for a laboratory, during which meeting **SIADO** offered to pay $150 "per swab" for each Medicare or Medicaid patient an individual obtained.

All done in violation of Title 18, United States Code, Section 371.

3. <u>Possible Sentence</u>

Defendant's guilty plea will subject him to the following maximum possible sentence: 5 years' imprisonment, 3 years' supervised release, a $250,000 fine, such restitution as may be ordered by the Court, and forfeiture of all forfeitable assets. The Court additionally must impose a $100 special assessment per count of conviction.

4. <u>No Promised Sentence</u>

No one has promised Defendant that the Court will impose any particular sentence or a sentence within any particular range. The Court is not bound by any

estimate of sentence given or recommendations made by Defendant's counsel, the government, the U.S. Probation Office, or anyone else. The Court may impose a sentence up to the statutory maximum. Defendant will not be allowed to withdraw his plea of guilty if he receives a more severe sentence than he expects.

5.   Court's Use of Sentencing Guidelines

The Court is obligated to use the United States Sentencing Guidelines to calculate the applicable guideline range for Defendant's offense. The Sentencing Guidelines are advisory; the Court is not required to impose a sentence within the range those Guidelines suggest. The Court will consider that range, possible departures under the Sentencing Guidelines, and other sentencing factors under 18 U.S.C. § 3553(a), in determining the Defendant's sentence. The Sentencing Guidelines are based on <u>all</u> of Defendant's relevant conduct, pursuant to U.S.S.G. § 1B1.3, not just the conduct underlying the particular Count or Counts to which Defendant is pleading guilty.

6.   Agreements Regarding Sentencing Guidelines

   a.   Use of Information

Nothing in this agreement precludes the government from providing full and accurate information to the Court and U.S. Probation Office for use in calculating the applicable Sentencing Guidelines range. Any incriminating information provided by the defendant during his cooperation will not be used in determining the applicable Guidelines range, pursuant to Section 1B1.8 of the Sentencing Guidelines.

b.   <u>Acceptance of Responsibility</u>

The government will not object to a recommendation by the U.S. Probation Office that Defendant receive a two-level reduction in offense level for acceptance of responsibility pursuant to Section 3E1.1(a) of the Sentencing Guidelines. If the U.S. Probation Office makes that recommendation, and Defendant's offense level is 16 or greater prior to any reduction for acceptance of responsibility, the government will move for an additional one-level reduction in offense level pursuant to Section 3E1.1(b) of the Sentencing Guidelines based on Defendant's timely notification of his intention to enter a guilty plea.

c.   <u>Loss</u>

The government and Defendant agree to recommend to the U.S. Probation Office and the Court at sentencing that the amount of loss, for purposes of Section 2B1.1(b)(1) of the Sentencing Guidelines, is more than $1,500,000 and less than $3,500,000.

d.   <u>Federal Health Care Offense Loss Greater Than $1,000,000</u>

The government and Defendant agree to recommend to the U.S. Probation Office and the Court at sentencing that the amount of loss to a Federal health care program, for purposes of Section 2B1.1(b)(7) of the Sentencing Guidelines, is more than $1,000,000 but less than $7,000,000.

e.   <u>Leader/Organizer Enhancement Under 3B1.1</u>

The government and Defendant agree to recommend to the U.S. Probation Office and the Court at sentencing that Defendant was an organizer or leader of a

criminal activity other than described in paragraphs 3B1.1(a) or (b), for purposes of Section 3B1.1(c) of the Sentencing Guidelines.

  e.  No Other Enhancements

The government and Defendant agree to recommend to the U.S. Probation Office and the Court at sentencing that no other enhancements apply.

7. Cooperation

  a.  Complete and Truthful Cooperation Required

Defendant must provide full, complete, candid, and truthful cooperation in the investigation and prosecution of the offenses charged in the Indictment and any related offenses. Defendant shall fully and truthfully disclose his knowledge of those offenses and shall fully and truthfully answer any question put to him by law enforcement officers about those offenses.

This agreement does not require Defendant to "make a case" against any particular person. His benefits under this agreement are conditioned only on his cooperation and truthfulness, not on the outcome of any trial, grand jury, or other proceeding.

  b.  Motion for Reduction in Sentence Based on Cooperation

The government, in its **sole discretion**, will decide whether Defendant's cooperation qualifies as "substantial assistance" pursuant to U.S.S.G. § 5K1.1 or Fed. R. Crim. P. 35 and thereby warrants the filing of a motion for downward departure or reduction in Defendant's sentence. If such a motion is filed, the Court, in its sole discretion, will decide whether, and to what extent, Defendant's sentence should be

reduced. The Court is not required to accept any recommendation by the government that the Defendant's sentence be reduced.

8.   **Financial Obligations and Agreements**

   a.   **Restitution**

The amount of restitution ordered by the Court shall include restitution for the full loss caused by Defendant's total criminal conduct. Restitution is not limited to the specific counts to which Defendant is pleading guilty. Any restitution judgment is intended to and will survive Defendant, notwithstanding the abatement of any underlying criminal conviction.

   b.   **Special Assessment**

Defendant agrees to pay a special assessment in the amount of $100, payable to the Clerk of the United States District Court, which shall be due immediately at the time of sentencing.

   c.   **Release of Appearance Bond**

Defendant authorizes the Clerk of the United States District Court to release the funds posted as security for an appearance bond in this case to be applied to satisfy any of the financial obligations including forfeiture imposed by judgment of the Court in this case.

   d.   **Required Financial Disclosures**

By the date that Defendant enters a guilty plea, Defendant shall complete a financial disclosure form listing all his assets and financial interests, whether held directly or indirectly, solely or jointly, in his name or in the name of another.

Defendant shall sign the financial disclosure form under penalty of perjury and provide that form to the Financial Litigation Unit of the United States Attorney's Office and to the United States Probation Office. Defendant authorizes the United States to obtain credit reports on Defendant and to share the contents of those reports with the Court and the United States Probation Office. Defendant also authorizes the United States Attorney's Office to inspect and copy all financial documents and information held by the United States Probation Office.

    e.    <u>Financial Examination</u>

Defendant will submit to an examination under oath on the issue of his financial disclosures and assets if deemed necessary by the United States. Such examination will occur not later than 30 days after the entry of Defendant's guilty plea.

    f.    <u>No Transfer of Assets</u>

Defendant certifies that he has made no transfer of assets in contemplations of this prosecution for the purpose of evading or defeating financial obligations created by this Agreement or that may be imposed upon him by the Court at sentencing. Defendant promises that he will make no such transfers in the future.

    g.    <u>Material Change in Circumstances</u>

Defendant agrees to notify the United States of any material change in circumstances, as described in 18 U.S.C. § 3664(k), that occurs prior to sentencing in this case. Such notification will be made within seven days of the event giving rise to the changed circumstances, and in no event later than the date of sentencing.

h.   <u>Enforcement</u>

Any payment schedule imposed by the Court is without prejudice to the United States to take all actions and remedies available to it to collect the full amount of the financial obligations imposed by the judgment of the Court in this case. Defendant understands and agrees that the financial obligations imposed by the judgment of the Court in this case will be placed on the Treasury Offset Program so that any federal payment that Defendant receives may be offset and applied to the judgment debt without regard to or affecting any payment schedule imposed by the Court.

9.   <u>Waivers</u>

   a.   <u>Waiver of Appeal</u>

Defendant entirely waives his right to a direct appeal of his conviction and sentence on any ground (including any argument that the statute to which the defendant is pleading guilty is unconstitutional or that the admitted conduct does not fall within the scope of the statute). The only exceptions are that the Defendant may file a direct appeal of his sentence if (1) the court enters a sentence above the statutory maximum, (2) the court enters a sentence above the advisory Sentencing Guidelines range found to apply by the court at sentencing; or (3) the Government appeals the sentence. Absent those exceptions, Defendant explicitly and irrevocably instructs his attorney not to file an appeal.

   b.   <u>Waiver of Collateral Attack</u>

Defendant entirely waives his right to collaterally attack his conviction and sentence on any ground and by any method, including but not limited to a 28 U.S.C.

§ 2255 motion. The only exception is that Defendant may collaterally attack his conviction and sentence based on a claim of ineffective assistance of counsel.

    c.    <u>FOIA and Privacy Act Waiver</u>

Defendant waives all rights, whether asserted directly or through a representative, to request or receive from any department or agency of the United States any record pertaining to the investigation or prosecution of this case under the authority of the Freedom of Information Act, 5 U.S.C. § 552, or the Privacy Act of 1974, 5 U.S.C. § 552a, and all subsequent amendments thereto.

    d.    <u>Fed. R. Crim. P. 11(f) and Fed. R. Evid. 410 Waiver</u>

Rule 11(f) of the Federal Rules of Criminal Procedure and Rule 410 of the Federal Rules of Evidence ordinarily limit the admissibility of statements made by a defendant during the course of plea discussions or plea proceedings. Defendant knowingly and voluntarily waives the protections of these rules. If Defendant fails to plead guilty, or his plea of guilty is later withdrawn, all of Defendant's statements in connection with this plea, and any leads derived therefrom, shall be admissible for any and all purposes.

10.    <u>Defendant's Rights</u>

Defendant has the right to be represented by counsel, and if necessary have the court appoint counsel, at trial and at every other critical stage of the proceeding. Defendant possesses a number of rights which he will waive by pleading guilty, including: the right to plead not guilty, or having already so pleaded, to persist in that plea; the right to a jury trial; and the right at trial to confront and cross-examine

adverse witnesses, to be protected from compelled self-incrimination, to testify and present evidence, and to compel the attendance of witnesses.

11. <u>Satisfaction with Counsel</u>

Defendant has had the benefit of legal counsel in negotiating this agreement. Defendant believes that his attorney has represented him faithfully, skillfully, and diligently, and he is completely satisfied with the legal advice given and the work performed by his attorney.

12. <u>Breach of Plea Agreement</u>

If Defendant fails to plead guilty, withdraws or attempts to withdraw his guilty plea, commits any new criminal conduct following the execution of this agreement, or otherwise breaches this agreement, the government is released from all of its agreements regarding Defendant's sentence, including any agreements regarding the calculation of Defendant's advisory Sentencing Guidelines. In addition, the government may declare the plea agreement null and void, reinstate any counts that may have been dismissed pursuant to the plea agreement, and/or file new charges against Defendant that might otherwise be barred by this plea agreement. Defendant waives any statute-of-limitations or speedy trial defense to prosecutions reinstated or commenced under this paragraph.

13. <u>Entire Agreement</u>

This agreement contains the entire agreement between the government and Defendant.

|  |  |
|---|---|
|  | BOBBY L. CHRISTINE<br>UNITED STATES ATTORNEY |
| _____<br>Date | _____<br>Karl I. Knoche<br>Chief, Criminal Division |
| 2/10/2020<br>Date | _____<br>J. Thomas Clarkson<br>Georgia Bar No. 656069<br>Assistant United States Attorney |
| 2/11/2020<br>Date | _____<br>Hank Syms<br>Georgia Bar No. 695009<br>Assistant United States Attorney |

I have read and carefully reviewed this agreement with my attorney. I understand each provision of this agreement, and I voluntarily agree to it. I hereby stipulate that the factual basis set out therein is true and accurate in every respect.

3.5.20
Date

_____
Patrick Siado
Defendant

I have fully explained to Defendant all of his rights, and I have carefully reviewed each and every part of this agreement with him. I believe that he fully and completely understands it, and that his decision to enter into this agreement is an informed, intelligent, and voluntary one.

3/5/2020
Date

_____
John Price
Defendant's Attorney

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA
AUGUSTA DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| v. ) | IND. NO. 1:19-cr-00149 |
| ) | |
| ) | |
| ) | |
| PATRICK SIADO ) | |

### ORDER

The aforesaid Plea Agreement, having been considered by the Court in conjunction with the interrogation by the Court of the defendant and the defendant's attorney at a hearing on the defendant's motion to change his plea and the Court finding that the plea of guilty is made freely, voluntarily and knowingly, it is thereupon,

ORDERED that the plea of guilty by defendant be, and it is, hereby accepted and the foregoing Plea Agreement be, and it is, hereby ratified and confirmed.

This 11th day of June 2020.

_____
J. RANDAL HALL, CHIEF JUDGE
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA